**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Benny Hammons,

    Petitioner

v.

Brian Williams, et al.,

    Respondents

Case No.: 2:14-cv-01902-JAD-GWF

**Order Dismissing Action**

[ECF No. 31]

Adjudicated habitual criminal and pro se petitioner Benny Hammons was found guilty of burglary and grand larceny and, because of his extensive criminal history, was sentenced to two consecutive life terms with the possibility of parole after ten years.[1] In a 44-count petition, Hammons seeks a writ of habeas corpus under 28 U.S.C. § 2254 based on claims that he received ineffective assistance of counsel at various stages of his case.[2] I dismissed most of his claims because they were noncognizable, procedurally barred, duplicative, or conclusory, but I allowed him to proceed on ten of them.[3] I now address those remaining claims on their merits. Finding that none of them affords him the relief that he requests, I dismiss them with prejudice.

## Background

**A.   The facts[4] underlying Hammons's conviction**

John Hightower rented his home from Aletha Custis's daughter, but he needed Aletha to help him get the electricity turned on at the utility office. Hammons drove Hightower over to Aletha's house so Aletha and Hightower could run their errand. Hammons and Hightower waited in Aletha's home as she made a copy of Hightower's driver's license, and Hammons complimented Aletha on her bedroom as he walked by—he didn't go inside it. The three soon

---

[1] ECF Nos. 17-25, 18-2.

[2] ECF No. 31.

[3] ECF No. 60 at 6.

[4] These background facts are taken from the transcript of Hammons's trial. ECF No. 17-23. For simplicity's sake, I cite to this exhibit generally for this entire background section.

1

exited the house and Aletha asked Hightower to pull the door shut behind him. As Aletha and Hightower left, Hammons stayed behind. Aletha watched in her rear-view mirror as she drove off, and saw she Hammons sitting in his car in front of her house.

When Aletha returned home, everything seemed normal. The front door was locked, she used her key to get in, and she came and went a few times without noticing that anything was amiss. But when she went in her bedroom that evening, she had difficulty unlocking her closet, there was a screwdriver on the floor inside her closet, and her safe was missing. Aletha acknowledged that multiple people knew about the safe, including her son—who had a drug addiction, her daughter, a young girl who used to live with her, and a male friend who helped her move the safe into her home. She also mentioned that she had tenants living in a separate part of the house who did not typically have access to her quarters but could if the front door was unlocked. Unknown female DNA was recovered from the screwdriver, and fingerprints recovered from the exterior and interior of the closet door matched Hammons's.

**B.     Procedural history**

Hammons unconditionally waived his preliminary hearing and was arraigned in the state district court on charges of burglary and grand larceny.[5] On January 27, 2010, a jury found Hammons guilty on both counts.[6] The judge adjudicated him a habitual criminal and sentenced him to two consecutive terms of life with the possibility of parole after ten years.[7] The judgment of conviction was filed that April, the Nevada Supreme Court affirmed Hammons's conviction and sentence, and remittitur issued on October 11, 2011.[8]

Hammons filed a pro se post-conviction habeas petition in state district court in February 2012.[9] The state court appointed counsel, who filed a supplemental petition on Hammons's

---

[5] ECF Nos. 17-4, 17-5, 17-6.

[6] ECF No. 17-25.

[7] ECF No. 18-2.

[8] ECF Nos. 19-4, 19-5.

[9] ECF No. 19-7.

behalf.[10] After an evidentiary hearing, the state district court denied the petition,[11] and the Nevada Supreme Court affirmed.[12] Hammons timely dispatched this federal habeas petition on November 10, 2014,[13] and he filed his operative, third-amended petition on June 8, 2016.[14] After a motion to dismiss, ten claims remain.[15] I now consider their merits.

## Discussion

### A. Legal standards

#### 1. *Antiterrorism and Effective Death Penalty Act (AEDPA)*

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[16] A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially

---

[10] ECF Nos. 19-13, 19-14.

[11] ECF Nos. 19-25, 20-7.

[12] ECF No. 21-5.

[13] ECF No. 7. Hammons filed a second state postconviction petition in state district court on July 11, 2016. ECF No. 72-3. The state district court denied that petition on October 12, 2016, ECF No. 73-9, and Hammons appealed. By taking judicial notice of the state-court dockets, I have learned that the Nevada Court of Appeals reversed and remanded the second state postconviction petition to the district court for the court to explicitly apply the test from *Berry v. State*, 363 P.3d 1148 (Nev. 2015), to determine whether Hammons was entitled to an evidentiary hearing. Nevada Court of Appeals Case No. 71523, order dated July 12, 2017. The case appears to be pending before the state district court. In any event, the second state postconviction petition raises only a separate actual innocence/*Brady* violation claim that Hammons has never raised or referred to in this federal litigation. So, the state proceedings do not impact this federal petition or its resolution.

[14] ECF No. 31.

[15] ECF No. 60.

[16] 28 U.S.C. § 2254(d).

3

indistinguishable facts.[17]  And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[18]  Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[19]  The "objectively unreasonable" standard is difficult to satisfy;[20] "even 'clear error' will not suffice."[21]

Habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[22]  As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[23]  "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[24]  AEDPA "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[25]

---

[17] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[18] *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014).

[19] *White*, 134 S. Ct. 1705–06.

[20] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[21] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[22] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[23] *Id.* at 103.

[24] *Id.* at 101.

[25] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

4

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[26] The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[27] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[28]

### 2. *Ineffective Assistance of Counsel*

The right to counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[29] Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance[.]'"[30] In the hallmark case of *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[31] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[32]

A reasonable probability is "probability sufficient to undermine confidence in the outcome."[33] Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[34] "The question is whether an attorney's representation amounted to

---

[26] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[27] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[28] 28 U.S.C. § 2254(e)(1).

[29] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[30] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[31] *Strickland*, 466 U.S. at 690.

[32] *Id.* at 694.

[33] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

[34] *Strickland*, 466 U.S. at 689.

incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[35] The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[36]

The *Strickland* standard also applies to appellate counsel.[37] Appellate counsel does not have a constitutional obligation to raise every nonfrivolous issue requested by the appellee.[38] "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."[39] A petitioner must show that counsel unreasonably failed to discover and argue nonfrivolous issues.[40] It is inappropriate to focus on what could have been done rather than focusing on the reasonableness of what counsel did.[41] So, a petitioner must prove that, but for counsel's errors, he would have prevailed on appeal.[42]

The United States Supreme Court has described federal review of a state supreme court's decision on an ineffective-assistance claim as "doubly deferential."[43] So, I "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'"[44] And I consider only the record that was before the state court that adjudicated the claim on its merits.[45]

---

[35] *Harrington*, 562 U.S. at 104.

[36] *Id.*

[37] *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted) (citing *Strickland*, 466 U.S. at 687).

[38] *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

[39] *Id.* at 751–52.

[40] *Delgado v. Lewis*, 223 F.3d 976, 980 (9th Cir. 2000) (citation omitted).

[41] *Williams v. Woodford*, 384 F.3d 567, 616 (9th Cir. 2004) (citation omitted).

[42] *Smith*, 528 U.S. at 285 (citation omitted).

[43] *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

[44] *Id.*

[45] *Id.* at 181–84.

**B.     Evaluating Hammons's remaining claims**

In grounds 7, 8, 9, and 11, Hammons alleges claims related to his pre-trial and trial proceedings. In grounds 1, 2, 3, and 10, he alleges that his counsel was ineffective at his sentencing hearing. Ground 6 is an allegation that claims 7–10 cumulatively constitute ineffective assistance. And in ground 12, Hammons alleges that his appellate counsel was ineffective for failing to provide a complete record on appeal to the Nevada Supreme Court. I now address these claims in this order because it better tracks the chronology of Hammons's case.

*1.     Ground 7*

The record reflects that Hammons's counsel, Mr. Goldstein, thought it best to waive the preliminary hearing because the prosecution only planned to call Aletha as a witness, who wouldn't help Hammons's defense, and the case "require[d] significant additional investigation."[46] Hammons had told Goldstein that he and Hightower were in cahoots with Aletha's son to commit insurance fraud. Hammons and Hightower would steal the safe, then the son would file an insurance claim, and the three of them would split the payout. Goldstein wanted to investigate this insurance scheme further, so he advised Hammons to waive the preliminary hearing. Hammons told the court that he understood the consequences of unconditionally waiving his preliminary hearing, including the lost opportunity to cross examine the prosecution's witnesses and call his own.[47]

Hammons argues in ground 7 that his trial counsel was ineffective for persuading him to waive his right to a preliminary hearing.[48] In Hammons's hindsight, the preliminary hearing would have given his counsel an opportunity to learn more about who all knew about the safe so

---

[46] ECF No. 17-4.

[47] *Id.*

[48] ECF No. 31 at 27.

that he could later investigate their motives and opportunities to steal it.[49] This would allow counsel to present a more effective defense by proposing alternate suspects.[50]

The Nevada Supreme Court affirmed the denial of this ineffective-assistance claim. The Court reasoned that substantial evidence supported the lower court's finding that counsel made a reasonable strategic decision to waive the preliminary hearing in the interest of thoroughly investigating Hammons's insurance-fraud scheme.[51] The Court also found that Hammons presented no evidence at the evidentiary hearing about what additional leads or information would have developed from a preliminary hearing, so he was unable to demonstrate a probability of a different outcome.

Reviewing the Nevada Supreme Court's decision through the doubly deferential AEDPA-*Strickland* lens, I find that Hammons is unable to show that it was contrary to, or involved an unreasonable application of the law. There is also no indication that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[52] So, I deny ground 7 as a basis for habeas relief.

### 2. Ground 8

Ground 8 is related to, but distinct from, ground 7. Hammons claims that Goldstein was ineffective for failing to conduct an adequate pretrial investigation, including identifying alternate suspects.[53] An adequate pretrial investigation, Hammons urges, would have included: (1) comparing the DNA that was on the screwdriver to Aletha's daughter's DNA; (2) interviewing Hightower for an alibi or other exculpatory evidence; (3) exploring why law enforcement wrapped up the investigation immediately after identifying Hammons's

---

[49] *Id.*

[50] *Id.*

[51] ECF No. 21-6 at 4–5.

[52] 28 U.S.C. § 2254(d).

[53] ECF No. 31 at 35–36.

fingerprints; and (4) subpoenaing Hammons's cell-phone records, which would have disproved the State's theory that Hammons conspired with Hightower or anyone else to steal the safe.[54]

Goldstein testified at the evidentiary hearing that he personally attempted to locate Hightower at the address that Hammons gave him, but he was unable to find him.[55] And even if he had found Hightower, he wouldn't have called him to testify "pretty much under any circumstances" because Hammons said that Hightower was an untrustworthy meth addict.[56] Goldstein also said that he never found any evidence to substantiate the alleged insurance-fraud scheme.[57]

When the Nevada Supreme Court affirmed the denial of this claim, it found that Hammons failed to demonstrate that law enforcement stopped its investigation as soon as they identified his fingerprints, so Hammons couldn't demonstrate that counsel was ineffective for failing to investigate why they stopped.[58] The Court also found that the recordd reflected that Goldstein had made a reasonable tactical decision in not calling Hightower as a witness.[59] And, as with ground 7, Hammons failed to present any evidence at his evidentiary hearing of what a more thorough investigation would have yielded or how it would have affected the outcome at trial, "nor did he demonstrate a reasonable probability of a different outcome where none of the hoped-for evidence would have explained his fingerprints on the inside of the locked closet where the stolen safe was kept."[60]

I find that Hammons has not demonstrated that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application, the *Strickland* standard. It was also not

---

[54] *Id.*

[55] ECF No. 19-25 at 95–101.

[56] *Id.*

[57] *Id.*

[58] ECF No. 21-6 at 5.

[59] *Id.*

[60] *Id.*

based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. So, I conclude that ground 8 affords Hammons no relief.

### 3. Ground 9

Hammons next argues that Goldstein was ineffective for failing to challenge the fingerprint evidence found on either side of the closet door.[61] In his view, Goldstein should have explored the fallibility of fingerprint evidence and cross examined the forensics expert about the surface from which the prints were lifted, especially since no one saw him take the safe, and the fingerprints were the only evidence connecting him to it.[62]

But Goldstein testified that the state postconviction evidentiary hearing that he did, in fact, hire his own expert to review the fingerprint evidence.[63] The expert agreed that the fingerprints lifted from the closet door matched Hammons's, so Goldstein didn't call him as a witness at trial.[64] Goldstein didn't remember whether Hammons asked him to challenge the validity of the fingerprint-analysis practice in general, but he stated that, if he had done so, he would have lost credibility with the jury.[65] Goldstein did, however, offer an alternative theory for why the fingerprints were on the door: Hammons was a handyman and looked for projects while Aletha copied Hightower's license, so he touched the door as he walked around the house.[66]

The Nevada Supreme Court found these strategic decisions reasonable and affirmed the lower court's denial of this claim for relief.[67] The Court found that there was substantial evidence in the record from which the lower court could legitimately find that Goldstein had

---

[61] ECF No. 31 at 39–42.

[62] *Id.*

[63] ECF No. 19-25 at 53–54.

[64] *Id.* at 86.

[65] *Id.* at 87.

[66] *Id.*

[67] ECF No. 21-6 at 5–6.

10

made a reasonable, strategic decision not to challenge the science behind fingerprint analysis and instead offer an alternative reason for their existence. Hammons, the Court reasoned, also failed to demonstrate by a preponderance of the evidence that there was any admissible evidence that Goldstein could have used to impeach the accuracy of fingerprinting analysis generally.

I find that Hammons has not demonstrated that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, the *Strickland* standard. He has also not shown that the Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. So, ground 9 is denied.

### 4. Ground 11

In ground 11, Hammons contends that the prosecution improperly commented on his decision not to testify and that Goldstein was ineffective for failing to object to the alleged comment.[68] During its closing argument, the State apparently emphasized that there was no explanation for Hammons's fingerprints on the outside and inside of the closet door.[69]

In affirming the convictions, the Nevada Supreme Court held that Hammons failed to object to the State's comments, but that, in any event, "a jury would not 'naturally and necessarily' view the State's comments on the unexplained presence of Hammons'[s] fingerprints at the crime scene as comments on Hammons'[s] failure to testify."[70] And in affirming the lower court's denial of this claim on postconviction relief, the High Court noted that it had already held that the State's remarks were not a comment on Hammons's silence, that the ruling constituted the law of the case, and that Hammons failed to demonstrate that counsel was objectively unreasonable in failing to object and that there was a reasonable probability of a different outcome had counsel objected.[71]

---

[68] ECF No. 31 at 48–50.

[69] ECF No. 17-23 at 231–40, 264–70.

[70] ECF No. 19-3 at 1.

[71] ECF No. 21-6 at 7.

Hammons has failed to show that the Nevada Supreme Court's decision on federal ground 11 was contrary to, or an unreasonable application of, *Strickland*. Nor has he shown that the Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. I therefore find that ground 11 is not a basis for habeas relief, and I deny it.

### 5. *Grounds 1–3*

In grounds 1–3, Hammons argues that Goldstein was ineffective for failing to object to the improper admission of invalid judgments of conviction from other states.[72] He claims in ground 1 that his prior convictions were never offered into evidence, that he never had the opportunity to admit or deny them and never stipulated to the validity of them, and that most of them would have been found invalid for habitual-criminal-enhancement purposes.[73] To the extent that Goldstein conceded to the prior convictions, Hammons urges that concession was improper and ineffective.[74]

In ground 2, Hammons argues that the State submitted uncertified judgments for two of his Ohio convictions and certified docket sheets without certified judgments for four other convictions in violation of NRS 207.015(5).[75] Because Goldstein failed to object to these allegedly invalid judgments of conviction, the court was misled on the quality and quantity of Hammons's criminal history. And had the court not been misled, he contends it would not have adjudicated him a habitual criminal.

Goldstein testified that he was well aware of Hammons's prior criminal history because he had researched it to prepare for trial.[76] Just before the sentencing hearing, the State gave Goldstein certified copies of 13 prior felony judgments of conviction, and Goldstein verified that

---

[72] ECF No. 31 at 3–18.

[73] ECF No. 31 at 3–7.

[74] *Id.*

[75] ECF No. 31 at 10–14.

[76] ECF No. 19-25 at 18–28, 111.

12

the case numbers matched those that were on the State's notice of intent to seek habitual criminal treatment. He also reviewed the presentence investigation report and the judgments of conviction with Hammons, and Hammons gave him no reason to question their authenticity.[77]

When the Nevada Supreme Court affirmed the denial of grounds 1 and 2, it reasoned that Nevada doesn't require "a formal offering and acceptance of evidence of prior convictions, nor has it required the articulation of 'talismanic phrases.'"[78] And although Hammons testified at the lower-court evidentiary hearing that Goldstein had not gone over the prior convictions with him—in direct contradiction to Goldstein's testimony—the lower court found Hammons's testimony to be not credible.[79] The Court also stated that "the judgment of conviction unequivocally demonstrated that [Hammons] was convicted of the primary offenses, was adjudicated a habitual criminal, and was sentenced accordingly."[80] And Hammons "failed to demonstrate prejudice where, even were the procedures improper, a successful objection would simply have resulted in the use of the proper procedure but not a reasonable probability of a different outcome."[81]

In ground 3, Hammons contends that counsel should have objected to six of his prior convictions because they couldn't be considered felonies under Nevada law, even though they were in the state in which he was sentenced.[82] The problem with Hammons's argument, as the Nevada Supreme Court pointed out, is that NRS 207.010(1)(b) considers crimes felonies (for purposes of habitual-criminal adjudication) if the state in which it was committed considers them felonies—even if Nevada doesn't.[83] The Nevada Supreme Court also held that Hammons had

---

[77] *Id.*

[78] ECF No. 21-6 at 2–4.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] ECF No. 31 at 16–18.

[83] *See* NEV. REV. STAT. § 207.010(1)(b) ("Any felony [sic], who has previously been three times convicted, whether in this State or elsewhere, of any crime which *under the laws of the situs* of

"neither alleged nor demonstrated by a preponderance of the evidence that any of his prior felony convictions were invalid."[84] So he failed to demonstrate a reasonable probability of a different outcome had Goldstein objected.[85]

I conclude that grounds 1–3 are meritless. Hammons has failed to show that the Nevada Supreme Court's decisions on these grounds were contrary to, or involved an unreasonable application of, the *Strickland* standard. He has also failed to show that the decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. I therefore deny relief on all three grounds.

### 6. *Ground 10*

For his tenth ground for relief, Hammons argues that Goldstein was ineffective at his sentencing hearing for failing to argue mitigating factors like the fact that his prior felony convictions were for non-violent crimes and that a habitual-criminal enhancement would result in a de facto life sentence considering his age and health.[86] He also argues that Goldstein was ineffective for conceding habitual-criminal treatment.[87]

Hammons's claim is belied by the record. Goldstein did argue mitigating factors, and he advocated for the small habitual-criminal enhancement. Goldstein tried to mitigate Hammons's sentence by highlighting Hammons's employment history as a truck driver, pointing out that his family had traveled from out of state to support him, and emphasizing that the theft was not violent.[88] And Goldstein acknowledged that, with 13 prior felonies, perhaps habitual-criminal treatment was warranted, but he advocated for the lesser habitual-criminal enhancement.[89]

---

the crime or of this State would amount to a felony is a habitual criminal . . .") (emphasis added); ECF No. 21-7 at 4.

[84] *Id.*

[85] *Id.*

[86] ECF No. 31 at 44–45.

[87] *Id.*

[88] ECF No. 19-25 at 28–33, 46–47.

[89] ECF No. 18-2 at 9–11.

14

Plus, the sentencing court made it clear that it considered sentencing Hammons to a longer term. The court told Hammons that he is the epitome of a career criminal and was "going to get hammered."[90] Then the court said, "I'll be perfectly honest with you, I would have even considered a greater sentence than what you indicated you would be willing to accept from— recommended by parole and probation to be perfectly honest with you, but I'll tone it down."[91]

When the Nevada Supreme Court affirmed the denial of this claim, it reasoned that Hammons had failed to demonstrate deficiency or prejudice, especially in light of his extensive criminal history and the sentencing court's suggestion that a greater sentence may have been considered.[92] In light of Hammons's criminal record, I cannot conclude that Goldstein's strategy to argue for small instead of large habitual-criminal treatment was an unreasonable one. He has therefore failed to show that the Nevada Supreme Court's decision to affirm the denial of this ground was contrary to, or involved an unreasonable application of, the *Strickland* standard. Nor has he shown that the Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. So, I find that ground 10 does not afford Hammons the relief that he seeks, and I deny it.

### 7. Ground 6

Ground 6 is essentially a cumulative-error claim, arguing that grounds 7–10 collectively violated Hammons's constitutional rights.[93] Generally, a separate cumulative-error claim for ineffective assistance of counsel is either noncognizable or duplicative of the underlying ineffective-assistance claims. In any event, I have found that Hammons has failed to show that his trial counsel committed any errors to cumulate. So, ground 6 is denied.

### 8. Ground 12

---

[90] *Id.* at 12.

[91] *Id.* at 13.

[92] ECF No. 21-6 at 6–7.

[93] ECF No. 31 at 27–28.

15

For his final ground, Hammons argues that appellate counsel was ineffective for failing to provide a complete record on appeal to the Nevada Supreme Court.[94] Two transcripts of hearings regarding Hammons's motion to substitute counsel were omitted. When the Nevada Supreme Court affirmed the lower court's denial of this claim, it noted that the minutes of those proceedings were sufficient for it to determine whether the lower court abused its discretion in denying the motion.[95] Hammons failed to provide the transcripts, so he was unable to show that the minutes were substantially different from the transcript.[96] This made it impossible for Hammons to show that Goldstein was objectively unreasonable in not providing the transcript or that there was a reasonable probability of a different outcome on appeal had counsel provided them.[97]

Hammons does not even suggest what additional information the transcripts would have revealed or how any such evidence would have changed the outcome of his direct appeal. He appears to purport that a slight form-over-substance technicality is his golden ticket out of prison—it's not. I therefore find that Hammons has failed to show that the Nevada Supreme Court's decision on ground 12 was contrary to, or involved an unreasonable application of, the *Strickland* standard. Ground 12 is denied.

### Conclusion

Because I deny each of Hammons's claims on its merits, IT IS HEREBY ORDERED that the third-amended petition **[ECF No. 31] is DENIED with prejudice in its entirety.** And because I find that reasonable jurists would not find my decision to deny this petition to be debatable or wrong, a **certificate of appealability is DENIED**.

. . .

---

[94] ECF No. 31 at 52.

[95] ECF No. 21-6 at 8–9.

[96] *Id.*

[97] *Id.*

16

The **Clerk of Court** is directed to **ENTER JUDGMENT and CLOSE THIS CASE**.

Dated: July 20, 2018

_____
U.S. District Judge Jennifer A. Dorsey